IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


LORENZO EDWARD ERVIN                    )
                                        )
        v.                              )        NO. 3:07-0832
                                        )
NASHVILLE PEACE AND JUSTICE             )
CENTER, et al.                          )


TO:  Honorable Robert L. Echols, Senior District Judge


# R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered August 1, 2007 (Docket Entry No. 2), this case was referred to the

Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636 and Rule 72 of the Federal Rules

of Civil Procedure, for case management, for decision on all pretrial, nondispositive motions, for

a report and recommendation on any dispositive motions, and to conduct any necessary proceedings.

Presently pending is Defendants' Motion (Docket Entry No. 114) for Summary Judgment,

to which Plaintiff has filed a response in opposition (Docket Entry Nos. 120-122).  Plaintiff has also

filed a separate Motion for Judgment on the Pleadings or for Summary Judgment (Docket Entry

No. 128), to which Defendants have filed a brief response (Docket Entry No. 129).  Set out below

is the Court's recommendation for disposition of the motions.


## I.  PROCEDURAL BACKGROUND

Plaintiff filed this action on August 14, 2007, against the "Nashville Peace and Justice Center

and its Board of Directors, individually and in their official capacities."  See Complaint (Docket

Entry No. 1).[1]  The action was filed under 42 U.S.C. § 1981, 42 U.S.C. § 1985(3), 42 U.S.C.

§§ 2000e-3 et seq., and 29 U.S.C. § 623.  Plaintiff alleges ten separate counts: (1) unjust dismissal;

(2) racially discriminatory performance appraisal; (3) breach of contract by denying mediation;

(4) retaliation; (5) civil rights conspiracy in violation of 42 U.S.C. § 1985(3); (6) denial of equal

protection of the law; (7) hostile working environment; (8) intentional discrimination; (9) violation

of whistleblower protections of Sarbanes-Oxley Act of 2002; and (10) age discrimination in

violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et. seq.  See

Complaint, at 19-30.

By Order entered September 29, 2008 (Docket Entry No. 97), the Court addressed several

pending motions filed by both Defendants and Plaintiff and dismissed with prejudice all claims in

the action except for Plaintiff's claims brought under 42 U.S.C. § 1981[2] and a state law claim for

breach of contract.

Defendants have filed an answer (Docket Entry No. 101) to the complaint, and a scheduling

order (Docket Entry No. 104) has been entered to facilitate pre-trial activity in the action.

## II. PLAINTIFF'S ALLEGATIONS

The allegations contained in  Plaintiff's thirty (30) page complaint are  summarized as

follows.

---

[1] Plaintiff did not specifically name the members of the Board of Directors.

[2] In the Report and Recommendation entered September 2, 2008, the Magistrate Judge noted
that Plaintiff's Section 1981 claims consisted of claims for wrongful termination (Count 1), for a
racially discriminatory performance appraisal (Count 2), for breach of contract (Count 3), for
unlawful retaliation (Count 4), and for a racially hostile workplace (Count 7).  See Docket Entry
No. 95, at 17.

2

On June 25, 2006, Plaintiff began working at the Nashville Peace and Justice Center ("NPJC") as the NPJC Coordinator. He asserts that the NPJC is self-described as a social justice organization. Plaintiff alleges that he was the first African-American hired for this position and that not all members of the NPJC Board of Directors ("Board") were happy that he was hired. See Complaint, at ¶¶ 11-12. Plaintiff's tenure at the NPJC did not last long, and on December 4, 2006, he alleges that "he was summarily dismissed after a long-running and contentious dispute over racial discrimination in the organization." Id. at ¶ 6. He contends that, almost immediately after beginning work at the NPJC, he was caught in the midst of in-fighting among members of the Board and that "[b]oth factions ultimately turned on him when he insisted on being his own man and to independently shape the position, and when he began complaining about internal racial discrimination, he was subjected to a long train of harassment activities," id., at ¶ 16, and that "[b]oth sides also used staff and Board members against him, to either report on his activities or to sabotage his efforts to succeed in the job." Id. at ¶ 15. Plaintiff alleges that Christine Van Regenmorter, who had been serving in the Coordinator position on an interim basis prior to his being hired, circulated a letter shortly after he was hired to some members of the Board stating that the plaintiff was "lazy," "unqualified," and had a "bad attitude." Id. at ¶ 13.

In July 2006, Plaintiff sent a letter to "people of color members of the NPJC Board" expressing his disappointment with "the level of internal racism in the organization, lack of measures to protect against discrimination, and encouraging [them] to come to the upcoming election and vote for a person of color, Melissa DaSilva." Id. at ¶ 17. Plaintiff alleges that one of the recipients of the letter objected to it, sent it to the entire Board, and that a group of members of the Board and others then "set out to harass and undermine Plaintiff at every turn." Id. at ¶¶ 17-18.

Plaintiff contends that Jane Hussain, the acting Board chairperson, called him on July 28, 2006, informing him that she was going to have an emergency Executive Committee meeting on August 4, 2006, to determine whether he should remain in his position.  Id. at ¶ 19.

Plaintiff asserts that the Board did not agree to the "attempted firing" at the August 4th meeting.  Id. at ¶ 20.  He contends that Hussain denied threatening to fire him until Plaintiff played a recording he had made of the telephone conversation.  He also contends that Hussain admitted at the August 4th meeting that the previous Coordinator "had done a similar thing" but that no meetings were held about him and he was not threatened with termination, at which point Plaintiff accused Hussain and the organization of using a "racist double standard."  Id. at ¶¶ 21-23.

Plaintiff alleges that DaSilva was elected the Board chairperson on August 7, 2006, and thereafter displayed hostility toward him.  Id. at ¶ 25.  Plaintiff contends that a series of "hostile letter writing campaigns" and e-mails took place during the next month amongst him and various persons at the NPJC regarding announcements or endorsements of political candidates in the NPJC newsletter, which Plaintiff edited each week.  Id. at ¶¶ 25-28.

Plaintiff alleges that, on September 11, 2006, Hussain grabbed papers out of his hands at the monthly NPJC Board meeting, threw them in the trash can, and "scream[ed]" at Plaintiff whenever he attempted to speak at the meeting.  Id. at ¶ 29.  Plaintiff states that he filed an employee grievance on September 20, 2006, complaining about Hussain's actions and about racial discrimination, harassment and retaliation, and requesting immediate action and the appointment of a mediator.  Id. at ¶ 30.  He asserts that, instead of resulting in corrective action, the grievance only intensified the efforts of Hussain and others to either have him fired or get him to resign his position.  As an example, he alleges that Eric Lewis, a Board member, sent an e-mail to Plaintiff and others

4

complaining about Plaintiff's filing of the grievance and asserting that Plaintiff was trying to destroy the organization and should be fired if he did not drop the grievance. Id. at ¶ 31.

Plaintiff asserts that he filed a charge with the Metro Human Relations Commission ("MHRC") on October 23, 2006, alleging racial discrimination, retaliation, and age discrimination. Id. at ¶ 35. He alleges that DaSilva berated him the next day regarding paperwork for the NPJC's non-profit status, which Plaintiff alleges was another issue of contention at the NPJC and about which his vocal concerns were ignored. Id. at ¶¶ 36 and 38-45. Plaintiff then filed an employee grievance against DaSilva alleging discourtesy and retaliation for his filing of a charge with the MHRC. Id. at ¶ 37.

A Board meeting occurred on November 6, 2006, and Plaintiff alleges that the Board agreed to take several steps to recognize and address the issues that had arisen since Plaintiff was hired and also agreed that a decision on his continued employment would be made in March 2007, after an evaluation by the Personnel Committee. Id. at ¶ 49. However, Plaintiff asserts that, at the November 21, 2006, Executive Committee meeting, a motion to fire him was made by Board member Karl Meyer, but a decision on the motion was postponed until the full board met again on December 4, 2006. Id. at ¶ 50. Plaintiff alleges that in the time period between the meeting on November 21, 2006, and the meeting on December 4th, e-mails were circulated among the Board members asserting that he should be fired. Id. at ¶ 51.

At the December 4th meeting, Plaintiff contends that Board member Eric Lewis "introduced a proposal alleging that Plaintiff was unfit to do his job, was unqualified, and had falsified his job application." Id. at ¶ 52. Plaintiff contends that the support for these allegations was the letter Van Regenmorter had written several months earlier, the existence of which Plaintiff was unaware until

the meeting.  <u>Id</u>. at ¶¶ 52-53.  Plaintiff states that he was summarily fired at the meeting in violation

of his contract and the NPJC personnel policy manual, that he was never provided mediation as he

repeatedly requested, and that he was subjected to evaluation procedures that had never been applied

to  prior Coordinators at the NPJC.  <u>Id</u>. at ¶¶ 53, 58-59.  Plaintiff alleges that Van Regenmorter

called him the next day to apologize that her letter had been used and that several members of the

Board and other NPJC employees expressed support for his position.  <u>Id</u>.  at ¶¶ 54-57.  He further

alleges that, after his dismissal, the NPJC and its Board circulated documents containing false

statements about his dismissal.  <u>Id</u>. at ¶¶ 63-65.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants argue that Plaintiff can show no set of facts which would establish that

Defendants discriminated against him based upon his race or any other protected category and,

further, that Plaintiff cannot establish that Defendants breached any contractual obligation to him.

Defendants argue that Plaintiff cannot satisfy the elements required to prove a <u>prima facie</u> case under

the burden shifting analysis applicable to his Section 1981 claims and, even if a <u>prima facie</u> case is

established, he cannot show evidence of pretext.  Specifically, Defendants assert that Plaintiff's

inability to perform his job was the sole and exclusive reason for his termination.

With respect to Plaintiff's state law contract claim, Defendants submit that to the extent that

the Plaintiff is unable to maintain his federal claims in the action, the Court should decline to

exercise jurisdiction over his state law claim. Alternatively, Defendants argue that the Court should

grant summary judgment on Plaintiff's claim for breach of contract because there are no material

facts in dispute upon which a jury could find in Plaintiff's favor on the claim.

6

In support of their motion, Defendants rely upon the Declaration of Christina Van Regenmorter (Docket Entry No. 116-2), the Declaration of Eric Lewis (Docket Entry No. 116-1), and the affidavit of Ginny Welsch (Docket Entry No. 26-1).

## IV. PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff seeks judgment on the pleadings or summary judgment on his claim of retaliation arguing that Defendants, in their motion for summary judgment, do not substantively deny his allegations of retaliation and the allegations should thus be regarded as true. See Docket Entry No. 128, at 1.

## V. STANDARD OF REVIEW

Summary judgment is warranted in favor of one party if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Rule 56(c) of the Federal Rules of Civil Procedure; Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The ultimate question to be addressed is whether there are any genuine issues of disputed material fact. See Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If genuine issues of material fact do not exist, summary judgment is appropriate.

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party,

Case 3:07-cv-00832   Document 133   Filed 09/23/09   Page 7 of 28 PageID #: 989

drawing all justifiable inferences in his favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. However, the nonmoving party may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting his claims and establishing the existence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 324; Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The nonmoving party "is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." Gaines v. Runyon, 107 F.3d 1171, 1174-75 (6th Cir. 1997). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Shah v. Racetrac Petroleum Co., 338 F.3d 557, 566 (6th Cir. 2003) (quoting Liberty Lobby, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "is not significantly probative" or is not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. Liberty Lobby, 477 U.S. at 249-52.


# VI. ANALYSIS

A. Plaintiff's Motion for Judgment on the Pleadings

Plaintiff's motion for judgment on the pleadings or for summary judgment should be denied.

8

The motion is untimely. The deadline for filing dispositive motions was April 30, 2009. <u>See</u> Scheduling Order (Docket Entry No. 104). However, Plaintiff's motion was not filed until nearly two months later on June 22, 2009.

Even if the motion were timely filed, the motion lacks merit. The fact that Defendants do not specifically address Plaintiff's Section 1981 retaliation claim in their motion for summary judgment does not render the claim uncontested or render the facts alleged by Plaintiff in support of the claim undisputed. The record in the action clearly shows that Defendants have contested the retaliation claim as indicated by their Answer. <u>See</u> Docket Entry No. 101, at 7. ¶¶ 82-84. Under these circumstances, judgment on the pleadings is not appropriate. Further, to the extent that he seeks summary judgment, Plaintiff has not properly supported his motion as required by Rule 56 and Local Rule of Court 56.01.

<u>B. Motion for Summary Judgment - Section 1981</u>

    <u>1. Hostile Workplace Claim (Count 7)</u>

In order for Plaintiff to support a claim that he was subjected to a racially hostile workplace, he must show that his "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment . . . ." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21, 114

9

S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal citations and quotation marks omitted).[3]  See also Jackson v. Quanex Corp., 191 F.3d 647, 658 (6th Cir. 1999).

The Court has reviewed the record in this action and finds that Plaintiff's claim suffers from significant shortcomings which warrant summary judgment in favor of Defendants on the claim.

Initially, Plaintiff simply has not set forth workplace incidents that rise to the level necessary to prove that a hostile workplace existed.  A hostile workplace claim requires evidence of conduct which is severe, pervasive, or extreme.  Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); Harris, 510 U.S. at 23; Williams v. General Motors Corp., 187 F.3d 553, 560 (6th Cir. 1999).  Consequently, evidence of harassing conduct, even if it is offensive, vulgar, inappropriate, or personally directed at a plaintiff, is not sufficient to support a claim unless it rises to the level of being severe, pervasive, or extreme.  See Faragher, supra; Bowman v. Shawnee State Univ., 220 F.3d 456, 464 (6th Cir. 2000) (five incidents of racial harassment did not constitute severe or pervasive conduct); Smith v. Leggett Wire Co., 220 F.3d 752, 760-61 (6th Cir. 2000) (incidents including a racial slur directed at plaintiff, a racially offensive and obscene cartoon circulated in the workplace, and an African-American employee referred to as a "gorilla" were deemed not severe or pervasive enough to constitute objectively hostile work environment); Kelly v. Senior Ctrs., Inc., 169 Fed.Appx. 423 (6th Cir. Feb. 8, 2006) (evidence that staff members used the pejorative N-word, that an executive described a board member as a "token black," commented that the participants were slovenly or were "pigs" at meals, and tolerated others' racist behavior, that

---

[3] Although Harris involved claims under Title VII, the standards and case law used to evaluate Title VII claims apply to Plaintiff's Section 1981 claims.  See Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 n.2 (6th Cir. 2000).

a coworker made three racist jokes, and that rude comments were made about African-American staff members' bathroom habits was not sufficient to meet the <u>Harris</u> threshold); <u>Prather v. Austin Peay State Univ.</u>, 2007 WL 2688546 (M.D. Tenn., Sept. 11, 2007) (Trauger, J.)(unpublished) (plaintiff did not show a hostile workplace based on allegations that she was disparaged in front of students by the department chairman and by a colleague, that she was not provided with adequate financial support, technical support, or mentoring, that she was removed from a leadership position, that she was singled out for absenteeism, that she was prohibited from giving final examinations early, that she was ostracized at department meetings, that she was never made the head of any committees, that she and her students were prevented from using certain facilities, that she was prevented from applying for a promotion in 2003, and that she was not reimbursed for travel expenses).

The incidents that form the basis of Plaintiff's hostile workplace claim -- verbal disagreements with others, the exchange of harsh or pointed e-mails regarding his work and issues of disagreement which existed at the NPJC, a negative performance evaluation, questions raised by board members regarding his continued employment, holding board meetings to discuss his employment, and a board member knocking papers out of his hand and yelling -- simply do not evidence the type of severe, pervasive, or extreme conduct required for a hostile workplace claim. Federal civil rights laws do "not guarantee a utopian workplace, or even a pleasant one," <u>Vore v. Indiana Bell Tel. Co., Inc.</u>, 32 F.3d 1161, 1162 (7th Cir. 1994), and should not be equated with a "general civility code." <u>Faragher</u>, 524 U.S. at 788; <u>Clark v. United Parcel Serv., Inc.</u>, 400 F.3d 341, 352 (6th Cir. 2005).

11

Furthermore, there is no evidence in the record which supports a conclusion that any of the workplace conduct about which Plaintiff complains occurred because of Plaintiff's race. Plaintiff has not pointed to evidence of a single incident when a racial epithet or slur was used toward him or when any other conduct occurred that could be reasonably viewed as inferring a racial connotation. Rather, any workplace problems, conflicts, or incidents that occurred while Plaintiff worked at the NPJC appear to have resulted from personality conflicts or differences of opinion between Plaintiff and his co-workers and/or members of the NPJC Board.

A hostile workplace claim cannot be predicated upon evidence of mere conflict, dissension, or turmoil in the workplace. There must be actual evidence of racial animus. See Arendale v. City of Memphis, 519 F.3d 587, 605-06 (6th Cir. 2008). "[P]ersonal conflict does not equate with discriminatory animus." Barnett v. Dep't of Veterans Affairs, 153 F.3d 338, 342-43 (6th Cir. 1998), cert. denied, 525 U.S. 1106, 119 S.Ct. 875, 142 L.Ed.2d 775 (1999) (upholding a district court's determination that witness's statements describing how supervisor made it known that "he disliked the plaintiff and used her as the butt of office jokes, are consistent with personal dislike rather than discriminatory animus"). See also Morris v. Oldham County Fiscal Court, 201 F.3d 784, 791 (6th Cir. 2000); Curry v. Nestle USA, Inc., 225 F.3d 658, 2000 WL 1091490 (6th Cir. July 27, 2000) (table decision) (hostile, profane, embarrassing, and indifferent statements and actions by supervisor toward female employee did not show that harassment was based upon sex, rather than personal animosity, and summary judgment was warranted in favor of the defendant on hostile workplace claim).

Plaintiff's subjective and conclusory allegations that a racial animus was behind the workplace incidents at issue are insufficient to create a genuine issue of material fact regarding

whether the work environment was racially hostile as defined by Harris. See Arendale, 519 F.3d at 606; Lovelace v. BP Prods. N. Am., Inc., 252 Fed.Appx. 33, 41 (6th Cir. Oct. 19, 2007); Kelly v. Boeing Petroleum Servs., Inc., 61 F.3d 350, 358 (5th Cir. 1995).

## 2. Wrongful Termination (Count 1) and Racially Discriminatory Performance Appraisal (Count 2)

Although set out as two separate claims, see Complaint (Docket Entry No. 1), at 19-21, these two claims are factually intertwined and are based on essentially the same allegations. Plaintiff contends that he was wrongfully terminated because of racial animus against him and that the performance evaluation/appraisal used to justify his termination was merely a pretext for racial discrimination. Accordingly, the Court views this as a single claim for a racially discriminatory termination.[4]

Although Plaintiff's claim is brought under Section 1981, a common framework governs race discrimination claims under both Title VII and 42 U.S.C. § 1981. Noble v. Brinker Int'l, Inc., 391 F.3d 715, 720 (6th Cir. 2004); Dews, 231 F.3d at 1021 n.2. In order to prevail on his claim that he was discriminated against because of his race, the Plaintiff "must offer direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." Johnson v. Kroger Co., 319 F.3d 858, 864-65 (6th Cir. 2003); Blalock v. Metals Trades, Inc., 775 F.2d 703, 707 (6th Cir. 1985).

---

[4] An employer's initiation of a performance evaluation is not by itself sufficient to constitute an adverse employment action and support a cause of action. See Primes v. Reno, 190 F.3d 765, 767 (6th Cir. 1999). This is so even if the employee complains that the evaluation was unfairly negative. Id. Accordingly, to the extent that Plaintiff seeks to assert an independent claim based solely upon the fact that he was given a performance evaluation, he fails to assert a cause of action.

13

Plaintiff has offered no direct evidence supporting his claim that he was terminated because of his race.[5]  Accordingly, in the absence of direct evidence, Plaintiff's claim is analyzed under the evidentiary framework for cases based upon circumstantial evidence set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1972), and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981).  Plaintiff must first establish a prima facie case of discrimination under this framework to create a rebuttable presumption of unlawful discrimination.  The burden then shifts to Defendants to articulate a legitimate nondiscriminatory reason for the challenged action.  Burdine, 450 U.S. at 254-56.  Upon Defendants' offer of a legitimate reason, the burden shifts back to Plaintiff to demonstrate that the proferred reason is pretextual, masking intentional discrimination.  Dews, 231 F.3d at 1021. Throughout the burden-shifting analysis, the ultimate burden of persuading the trier of fact that Defendants intentionally discriminated against Plaintiff remains at all times with Plaintiff.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 517-18, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004).

To establish a prima facie case of a discriminatory termination, Plaintiff must show that: (1) he is a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified for the position from which he was fired; and (4) he was replaced by a person outside the protected class or was treated differently than similarly situated non-protected employees.

---

[5] Direct evidence of discrimination "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group."  Johnson, 319 F.3d at 865. See also Jacklyn v. Shering-Plough Healthcare Prods. Sales Corp., 176 F.2d 921, 926 (6th Cir. 1999).  No such evidence has been presented by Plaintiff.

14

Clayton v. Meijer, Inc., 281 F.3d 605, 610 (6th Cir. 2002); Newman v. Fed. Express Corp., 266 F.3d 401, 406 (6th Cir. 2001); Mitchell v. Toledo Hosp., 964 F.2d 577, 582-83 (6th Cir. 1992).

Defendants concede that Plaintiff has met the first two elements of his prima facie case but argue that he does not satisfy the third element of his prima facie case because the evidence shows that he was not qualified for the position in question. See Memorandum in Support (Docket Entry No. 115), at 5-6. Defendants argue that the evidence shows that Plaintiff lacked the computer skills necessary to perform the essential functions of the job and that he misrepresented his qualifications regarding these skills and regarding his experience managing Section 501(c)(3) nonprofit organizations and fundraising activities. Defendants contend that it was immediately apparent after Plaintiff began working at the NPJC that he lacked the necessary knowledge, skills and experience to perform the essential functions of his job.

The Court of Appeals for the Sixth Circuit has held that the Court may not consider the proffered legitimate, nondiscriminatory reason for a plaintiff's termination in its analysis of whether Plaintiff has met his burden of showing that he was qualified for the job to satisfy his prima facie case. See Tysinger v. Police Dep't of the City of Zanesville, 463 F.3d 569, 573 (6th Cir. 2006); Cicero v. Borg-Warner Auto., Inc., 280 F.3d 579, 585-87 (6th Cir. 2002); Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 660-661 (6th Cir. 2000). The Sixth Circuit has warned against "conflating" the two stages of the McDonnell Douglas inquiry, i.e., the qualification prong of the prima facie case and Defendants' proffer of a legitimate, nondiscriminatory reason for the adverse action. Cicero, 280 F.3d at 584; Cline, supra. In other words, the Court must assess whether a plaintiff met the employer's legitimate expectations before the events leading to the adverse action. Tysinger, supra; Cicero, 280 F.3d at 585; Cline, supra. Typically, the Court will consider a plaintiff's past

15

employment along with evaluations and other indicia of performance since he became employed by the defendant.

The instant case does not, however, fall neatly into the construct presented by <u>Tysinger</u>, <u>Cicero</u>, and <u>Cline</u>. In this case, there is little or no track record for Plaintiff prior to the events leading up to his termination. Plaintiff was a probationary employee whose tenure lasted less than six months. As Plaintiff himself sets out, problems began developing almost immediately after he became employed, and his termination was first addressed less than six weeks after his job began. Therefore, there is little for the Court to consider in terms of Plaintiff's job performance prior to the events leading to his termination. Defendants contend that Plaintiff misrepresented his qualifications when he was originally hired. Plaintiff did not file a response to Defendants' statement of material undisputed facts in which Defendants specifically asserted that the job description required a knowledge of Microsoft Office Programs and that Plaintiff had misrepresented that he had that knowledge. <u>See</u> Docket Entry No. 117, at ¶ 1-3.[6] In addition, Plaintiff has not provided any information about his qualifications for his job prior to his being hired by Defendants.

Under these circumstances, the rationale of <u>Tysinger</u>, <u>Cicero</u>, and <u>Cline</u> is difficult to apply. The Eastern District of Michigan has expressed similar concerns. <u>See</u> <u>Hoffman v. Sebro Plastics, Inc.</u>, 108 F.Supp.2d 757, 772 n.15 (E.D. Mich. 2000); <u>Nizami v. Pfizer, Inc.</u>, 107 F.Supp.2d 791, 801 n. 11 (E.D. Mich 2000). However, the mandate of the Sixth Circuit is clear. Since the reasons proffered by Defendants in support of their argument that Plaintiff has not met the qualification prong of the <u>prima facie</u> case are the same reasons proffered by Defendants in support of their

_____

[6] By order entered May 9, 2009 (Docket Entry No. 118), Plaintiff was specifically advised that he must file a response to Defendants' statement of undisputed material facts.

16

legitimate, nondiscriminatory reason for terminating Plaintiff. Therefore, the Court cannot consider those reasons in assessing Plaintiff's <u>prima</u> <u>facie</u> case.

Since there is virtually no evidence before the Court about whether or not Plaintiff met Defendants' legitimate expectations before the events giving rise to his termination, the only evidence upon which the Court can find that Plaintiff was qualified for the position is the fact that he was, in fact, hired and continued in his position for approximately six months. Given the constraints addressed above and viewing Plaintiff's allegations most favorably to him, <u>see</u> Plaintiff's Affidavit (Docket Entry No. 121), at 15, the Court is compelled to find that Plaintiff has met his burden, albeit not an onerous burden, of showing that he was qualified for his position.

Defendants also argue that Plaintiff fails to satisfy the fourth element of his <u>prima</u> <u>facie</u> case because the evidence shows that he was not replaced with a person outside the protected class. <u>See</u> Memorandum in Support (Docket Entry No. 115), at 6-7. It is not clear whether Defendants contend that Plaintiff's position was filled by the then existing grassroots coordinator, who was an African-American, <u>see</u> Docket Entry No. 115, at 3 and 6, or whether no one was specifically hired to fill the position and the grassroots coordinator merely took on the extra responsibilities of the Coordinator. <u>See</u> Docket Entry No. 26-1, at 3.[7] However, relying on Ms. Welsch's affidavit, Defendants assert in their statement of undisputed material facts that Plaintiff was not immediately replaced and his duties were assumed by an African-American male. <u>See</u> Docket Entry No. 117, at ¶ 13.

---

[7] It appears that the sentence in Ms. Welsch's affidavit "No one was hired to take on the Coordinator's position due to lack of funding" may have been stricken but the sentence is not clearly redacted nor did Ms. Welsch initial the redaction. <u>See</u> Docket Entry No. 26-1, at ¶ 3.

Defendants' argument fails to require summary judgment in their favor because, as an alternative to showing that he was replaced by someone outside the protected class, Plaintiff may satisfy the fourth element of his prima facie case by showing that he was treated less favorably than similarly situated employees who are not in the protected class.[8]  See Russell v. University of Toledo, 537 F.3d 596, 604 (6th Cir. 2008); Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995); Mitchell, 964 F.2d at 582-83.  Plaintiff argues that he was the only Coordinator at the NPJC who was ever given a performance evaluation and specifically identifies Matt Leber[9] as a prior NPJC Coordinator who had not been given a performance evaluation.  See Plaintiff's Affidavit (Docket Entry No. 121), at 15, ¶¶ 60.  Such evidence satisfies Plaintiff's burden with respect to the fourth element of his prima facie case.[10]

Since Plaintiff has shown a prima facie case, the burden shifts to Defendants to articulate a legitimate nondiscriminatory reason for Plaintiff's termination.  Burdine, 450 U.S. at 254-56. Defendants assert that Plaintiff was terminated because he misrepresented his skill set, lacked the necessary knowledge, skills, and experience to perform the Coordinator position, and showed an

---

[8] Defendants acknowledge that a plaintiff can establish the fourth prong of his prima facie case by showing that he was treated less favorably than similarly situated employees outside the protected class, see Docket Entry No. 115, at 5, but Defendants do not address that alternative portion of the fourth prong of the prima facie case as it pertains specifically to Plaintiff's case.

[9] Although Plaintiff does not state that Mr. Leber is a person outside the protected class, Plaintiff clearly states that all NPJC Coordinators prior to his being hired were white individuals. See Plaintiff's Affidavit, at 16, ¶ 63.

[10] Plaintiff also identifies Keith Caldwell and Jen Cartwright as two individuals who were not given performance evaluations.  See Plaintiff's Affidavit, at 16, ¶¶ 61 and 62.  However, Caldwell is not someone who is outside the protected class and a question exists as to whether he actually served as the NPJC Coordinator.  Cartwright is not similarly situated to Plaintiff because she did not serve in the NPJC Coordinator position.  Id.  Thus, this evidence is irrelevant because neither individual is a similarly situated person who is outside the protected class.

18

inability to perform the job during his probationary period. See Defendants' Memorandum in Support (Docket Entry No. 115), at 7. They contend that Cristina Van Regenmorter, a former NPJC employee who trained Plaintiff during his first month on the job, provided a written report to the NPJC Personnel Committee detailing her interactions with Plaintiff during the training period and her concerns about his ability to perform the job and that the full NPJC Board subsequently relied on that report in making the decision to terminate Plaintiff's employment. See Declaration of Eric Lewis (Docket Entry No. 116-1) and Christina Van Regenmorter (Docket Entry No. 116-2). This proffered explanation is facially legitimate and nondiscriminatory and is supported by admissible evidence. As such, it satisfies Defendants' burden of articulating a legitimate, nondiscriminatory reason supporting the challenged termination. See White v. Baxter Healthcare Corp., 533 F.3d 381, 392 (6th Cir. 2008); Hansel v. Keys, 87 F.3d 795, 800 (6th Cir. 1996) ("It is important to note that the defendant need not prove a nondiscriminatory reason for not promoting [the plaintiff], but need merely articulate a valid rationale.")

    The burden thus falls on Plaintiff to show that the articulated reason was actually a pretext for racial discrimination. See Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 593 (6th Cir. 2007). Plaintiff can demonstrate pretext by showing that the Defendants' proffered reason: (1) had no basis in fact; (2) did not actually motivate the termination; or (3) was insufficient to warrant the termination. Dews, 231 F.3d at 1021; Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994). To carry his burden in opposing summary judgment, Plaintiff must produce sufficient evidence from which a jury could reasonably reject Defendants' explanation of the reason Plaintiff was fired. Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 526 (6th Cir. 2008) (quoting Braithwaite v. Timken Co., 258 F.3d 488, 493-94 (6th Cir. 2001)).

Although Plaintiff opposes the motion for summary judgment, he fails to make an argument based on any of the three methods of showing pretext recognized in <u>Manzer</u>. Instead, Plaintiff reasserts, in some cases verbatim, several paragraphs of argument which were previously set out in his responses in opposition to Defendants' prior motion to dismiss. <u>Compare</u> Plaintiff's Motion to Deny Summary Judgment (Docket Entry No. 120), at 4-7, <u>with</u> Plaintiff's Response In Opposition (Docket Entry No. 36), at 10-11, ¶¶ 27-30 and Plaintiff's Motion (Docket Entry No. 36), at 2-3. These arguments are not responsive to Defendants' assertion of a legitimate, nondiscriminatory reason and fail to support the denial of summary judgment.[11]

The only new argument made by Plaintiff is his contention that the November 13, 2006, letter attached to the declaration of Christina Van Regenmorter, <u>see</u> Docket Entry No. 116-2, should be stricken because it has not been authenticated by Ms. Van Regenmorter and because, at the time the NPJC Board relied upon it at the December 4, 2006, board meeting which resulted in Plaintiff's termination, Ms. Van Regenmorter was not brought forward to testify to its accuracy or truthfulness. <u>See</u> Plaintiff's Motion to Deny Summary Judgment (Docket Entry No. 120), at 6-7.

Plaintiff's contention is without merit. The November 13, 2006, letter is attached to the declaration of Ms. Van Regenmorter, in which she declares, under the penalty of perjury, that the attached letter is a true and accurate copy of the letter she prepared and that the facts contained therein are true and correct to the best of her information and belief. The November 13, 2006, letter

---

[11] Included in these paragraphs are Plaintiff's assertions that "Defendants provide no reasoning at all in their Motion to Dismiss why the adverse employment action was taken" and "[Defendants] have yet to offer any claim or defense as to why Plaintiff was discharged." <u>See</u> Docket Entry No. 120, at 5-6. Such assertions have clearly been cut and pasted from Plaintiff's prior response, are not accurate, and are not relevant to arguments made by Defendants in their motion for summary judgment.

has been properly sworn to and authenticated for the purposes of the motion for summary judgment, and Plaintiff has not shown any reason why the letter or the declaration of Ms. Van Regenmorter should be stricken. The fact that the NPJC relied on the letter at the December 4, 2006, board meeting without Ms. Van Regenmorter's authenticating it is irrelevant.

The undisputed facts show: 1) Plaintiff was a probationary employee during the first six months of his employment; see Declaration of Eric Lewis (Docket Entry No. 116-1), at ¶ 7; NPJC Job Offer (Docket Entry No. 36-1), at 4; 2) Ms. Van Regenmorter, the former NPJC employee who was involved in Plaintiff's hands-on-training immediately after he was employed, had significant concerns about his underlying qualifications for the job and his ability to perform the job, and these concerns were later memorialized in a written letter to the NPJC Personnel committee; see Declaration of Cristina Van Regenmorter; and 3) the NPJC Board met prior to the end of Plaintiff's probationary period and terminated Plaintiff's employment based on the asserted reason of inadequate job performance. See Declaration of Eric Lewis, at ¶ 9; Affidavit of Plaintiff (Docket Entry No. 37), at ¶ 56.

In light of these facts, Plaintiff has simply not met his burden of showing pretext. Although Plaintiff may dispute that his job performance at the NPJC was deficient and that this deficiency warranted his termination, his subjective belief is not sufficient to show pretext. Further, the ultimate question of whether or not Plaintiff was adequately performing his job at the NPJC is not the critical question. When an employer has an honest belief in the proffered basis for the adverse employment action, and that belief arose from reasonable reliance on particularized facts that were before the employer when it made the decision, the asserted reason will not be deemed pretextual even if it was erroneous. See Sybrandt v. Home Depot, U.S.A., Inc., 560 F.3d 553, 559 (6th Cir.

2009); Allen v. Highlands Hosp. Corp., 545 F.3d 387, 398 (6th Cir. 2008); Michael, 496 F.3d at 598 (explaining that the plaintiff's "disagreement with the facts uncovered in [the employer's] investigation does not create a genuine issue of material fact that would defeat summary judgment as long as an employer has an honest belief in its proffered nondiscriminatory reason" (internal quotation marks omitted)); Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001) ("[A]s long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect").  Further, the decisional process used by the employer need not be optimal or leave no stone unturned.  Michael, supra.

        The written report of Ms. Van Regenmorter provided particularized facts regarding Plaintiff's work performance and his continued suitability for the position.  Plaintiff has offered no evidence showing that it was unreasonable for Defendants to rely on this report, and he fails to show that Defendants' reliance on this report does not constitute an honest belief on the part of Defendants supporting his termination.

        By his affidavit (Docket Entry No. 121), Plaintiff sets out a litany of alleged facts regarding turmoil and dissension within the NPJC during his short tenure as the NPJC Coordinator.  A fair reading of the affidavit and the other evidence which is in the record certainly shows that Plaintiff was involved in several incidents involving members of the NPJC Board that were less than harmonious, see Plaintiff's Affidavit (Docket Entry No. 37), at ¶¶ 19, 21, 27-30, and 31 and Declaration of Eric Lewis, at ¶ 6, and that his short tenure at the NPJC was accompanied by frequent disagreements with members of the NPJC board.  Even if taken as true, however, these facts fail to evidence a racial animus on the part of Defendants or provide a basis to infer that the stated reason

22

for his termination was a pretext for racial discrimination. Plaintiff's attribution of racial animus on the part of Defendants is self-serving, conclusory, and unsupported by any evidence. At the stage of summary judgment, Plaintiff must support his claims with specific facts and supporting evidence, not mere allegations and speculation. See Sutherland v. Mich. Dep't of Treasury, 344 F.3d 603, 623 (6th Cir. 2003); Henry v. Wausau Bus. Ins. Co., 351 F.3d 710, 713 (6th Cir. 2003). It is noteworthy that, despite asserting in his affidavit that other individuals made comments, witnessed events, or otherwise supported him, Plaintiff has not submitted supporting affidavits or declarations from any other individuals.

Additionally, Plaintiff has made factual assertions in his affidavit which are both unsupported by any evidence and contradicted by the evidence which is before the Court. For example, Plaintiff asserts that Ms. Van Regenmorter secretly circulated her written report to certain NPJC board members and to the NPJC Personnel Committee shortly after he reported for his position and that the letter stated that Plaintiff was "lazy," "unqualified," and had an overall "bad attitude" about the job. See Docket Entry No. 121, at ¶ 18. Plaintiff has offered absolutely no evidence that Ms. Van Regenmorter's written report was secretly circulated to anyone shortly after he reported for his position and his assertion that the report stated that he was "lazy" and had an overall "bad attitude" is contradicted by the actual report itself which contains no such statements.[12] See Docket Entry No. 116-2, at 3-9. Similarly, Plaintiff asserts that Eric Lewis wrote an e-mail, dated October 20, 2006, in which he accused Plaintiff of using his grievance against Jane Hussain to try to "destroy the

_____

[12] Plaintiff's assertion the Ms. Van Regenmorter wanted to keep the NPJC Coordinator job and created the written report in retaliation for "having to give up the position in favor of [Plaintiff]," see Docket Entry No. 121, at ¶ 18, is also unsupported by any evidence in the record.

organization [NPJC]" and demanded that Plaintiff be fired if he did not drop the grievance and apologize to Jane Hussain.  See Docket Entry No. 121, at ¶ 33.  The  e-mail referenced by Plaintiff (which is actually an attachment to an e-mail) contains no such statements.  See Docket Entry No. 36-1, at 44.

Based on the entire record before the Court, no reasonable trier of fact could find in favor of Plaintiff on his claim that he was wrongfully terminated because of his race.


4. Breach of Contract (Count 3)[13]

The employment agreement signed by Plaintiff contains the following language immediately prior to the signature lines:

> I have read and fully understand the Personnel Policies.  I further agree that any disputes between the Nashville Peace and Justice Center and myself will go through neutral mediation.  I waive my right to proceed with disputes through the public court system.  I understand that NPJC in every way will try to resolve any issue that I may have.

See Docket Entry No. 36-1, at 9.[14]  Plaintiff contends that Defendants' refusal to provide him with mediation of his disputes, despite his repeated requests for mediation, breached his employment contract in violation of Section 1981 and state law.  See Complaint (Docket Entry No. 1), at ¶¶ 77-81.

---

[13] As set out infra at 27, the Court finds the Defendants have not shown that they are entitled to summary judgment on Plaintiff's Section 1981 retaliation claim.  Since Defendants only argue that the Court should decline to exercise supplemental jurisdiction over  Plaintiff's state law breach of contract claim if the federal claims are dismissed, see Docket Entry No. 115, at 10, the Court will address the state law breach of contract claim.

[14] The employment agreement provided by Plaintiff is not signed but it appears undisputed that the agreement was signed by Plaintiff and representatives of Defendants.

24

It is undisputed that Plaintiff requested mediation of his workplace grievances[15] and that no such mediation occurred prior to Plaintiff's termination even though the parties discussed arranging a mediation and proposed mediators were suggested. The parties dispute the reasons why mediation did not occur; Plaintiff contends that Defendants refused to provide a mediation while Defendants contend that Plaintiff effectively halted any proposed mediation by rejecting all proposed mediators. Compare Plaintiff's Affidavit (Docket Entry No. 121), at ¶¶ 65-67 with Declaration of Eric King, at ¶ 8.

However, the Court finds that this factual dispute does not raise a genuine issue of material fact which requires submission of either of the breach of contract claims to a jury.

Section 1981 offers relief when racial discrimination impairs an existing contractual relationship. See Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006). A plaintiff asserting a Section 1981 claim must prove intentional discrimination. Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 389, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982); Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 870 (6th Cir. 2001).

As set out supra, the Court finds no evidence supporting Plaintiff's allegations that he was subject to racial discrimination at the hands of Defendants regarding his employment at the NPJC. Specifically, he has not set forth any evidence which directly shows or from which it can be inferred that he was denied mediation of his disputes at the NPJC as an act of intentional racial discrimination. Accordingly, his breach of contract claim under Section 1981 should be dismissed.

---

[15] The record before the Court shows that Plaintiff specifically made requests for mediation of the workplace disputes involving Jane Hussain and Melissa Da Silva. Plaintiff also states that he requested mediation a third time. See Plaintiff's Affidavit (Docket Entry No. 121), at ¶ 67. However, it is not clear when this third request was made or what it specifically concerned.

Under Tennessee common law, a plaintiff seeking damages for an alleged breach of contract must prove: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; and (3) damages caused by the breach of contract. See Life Care Ctrs. of Am., Inc. v. Charles Town Assocs., Ltd., 79 F.3d 496, 514 (6th Cir. 1996); BancorpSouth Bank, Inc. v. Hatchel, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006).

In the instant action, Plaintiff's state law breach of contract claim warrants dismissal because he cannot show damages from the purported breach. Damages for a breach of contract represent payment for actual losses caused by the breach of contract. Parties are not entitled to uncertain, contingent, or speculative damages. See Moore Constr. Co. v. Clarksville Dep't of Elec., 707 S.W.2d 1, 15 (Tenn. Ct. App. 1985); Maple Manor Hotel, Inc. v. Metropolitan Gov't of Nashville and Davidson County, 543 S.W.2d 593, 599 (Tenn. Ct. App. 1975). Damages will be considered uncertain or speculative when their existence is uncertain, see Jennings v. Hayes, 787 S.W.2d 1, 3 (Tenn.Ct.App. 1989); Cummins v. Brodie, 667 S.W.2d 759, 765 (Tenn.Ct.App. 1983), or when the proof is insufficient to enable a trier of fact to make a fair and reasonable assessment of damages. See Wilson v. Farmers Chem. Ass'n, Inc., 60 Tenn.App. 102, 111, 444 S.W.2d 185, 189 (1969).

The governing principle in determining damages in breach of contract actions "is to compensate for damages actually incurred 'by placing the plaintiff in the position he would have occupied had the contract been fulfilled in accordance with its terms.'" Safeco Ins. Co. v. City of White House, Tennessee, 133 F. Supp. 2d 621, 630 (M.D. Tenn. 2000) (quoting Grantham and Mann, Inc. v. American Safety Prods., Inc., 831 F.2d 596, 601 (6th Cir. 1987)). Plaintiff has not sought specific performance of the mediation clause. Instead, he seeks monetary damages. However, Plaintiff fails to show any type of compensable injury on account of the purported failure

of Defendants to mediate his grievances or disputes. Indeed, Plaintiff has not provided the Court

with any legal support for the viability of such a claim under Tennessee common law, and the Court

finds persuasive case law from other jurisdictions which holds that there is no claim for damages

based upon the theory of failure to mediate in accordance with a contractual provision. See Marland

v. Safeway, Inc., 65 Fed.Appx. 442, 2003 WL 135647 (4th Cir. Jan. 17, 2003) (unpublished);

Martin v. Howard, 784 A.2d 291, 302 (R.I. 2001) ("the breach of an alleged agreement to

mediate-even if it were in writing-fails to state a claim for which damage relief can be granted.");

Jones v. Garber, 2000 WL 33259916 (Va.Cir.Ct. Apr. 21, 2000) (unpublished) ("Although the

contract in this case does require mediation before litigation, there is no true remedy for a failure to

mediate."). See also Northwest Const. Co., Inc. v. Oak Partners, L.P., 248 S.W.3d 837, 852

(Tex.Ct.App. 2008).


5. Retaliation (Count 4)

Defendants' motion for summary judgment addresses only Plaintiff's claim of racial

discrimination and his state law claims for breach of contract. Accordingly, Defendants have not

shown that they are entitled to summary judgment on Plaintiff's claim for retaliation under Section

1981.


## R E C O M M E N D A T I O N

Accordingly, the Court respectfully RECOMMENDS that:

1) Plaintiff's motion for judgment on the pleadings or for summary judgment (Docket Entry

No. 128) be DENIED; and

2) Defendants' motion (Docket Entry No. 114) for summary judgment:

       a) be DENIED as to Plaintiff's claim for retaliation under 42 U.S.C. § 1981,

and this claim be set for trial; and

       b) be GRANTED as to all other claims alleged by Plaintiff.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

       Respectfully submitted,

       _____

       JULIET GRIFFIN
       United States Magistrate Judge

Case 3:07-cv-00832   Document 133   Filed 09/23/09   Page 28 of 28 PageID #: 1010